IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNETTA G., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-1272-SMY |
| | ) |
| KILOLO KIJAKAZI, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|        Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Jennetta G. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for DIB in October 2017, alleging a disability onset date of December 8, 2014 (Tr. 13). Her claims were denied initially on December 18, 2017 and denied again on reconsideration on May 21, 2018 (Tr. 13). Plaintiff requested a hearing which took place on August 13, 2019 (Tr. 13).

Following an evidentiary hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's application on December 13, 2019 (Tr. 22). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues for judicial review:

1. The ALJ erred when he failed to submit new medical evidence (Dr. Mota) to medical expert review and instead relied on his own interpretation of the new evidence.

2. The ALJ erred by failing to obtain vocational evidence outside of questioning Plaintiff when considering step 4 of the sequential evaluation process.

## Legal Standard

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability

to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date (Tr. 15). He found that Plaintiff had severe impairments of degenerative disc disease, degenerative joint disease of the hips, chronic small vessel disease of the brain with a left infarct/transient ischemic accident in June 2015 with no residuals, and neuropathy of the feet. He also found however, that the evidence failed to establish that these conditions have not been responsive to treatment and/or that they cause more than minimally vocationally relevant limitations (Tr. 16). The ALJ concluded that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, including that the record was devoid of evidence that Plaintiff was unable to ambulate effectively or had limitations in either the ability to stand up from a seated position, or to balance while standing/walking (Tr. 16-17).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to do the following:

> Light work as defined in 20 CFR 404.1567(b) except she could occasionally balance, kneel, crouch, crawl, and climb ramps and stairs. She could not climb ladders, ropes, or scaffolds. She had to avoid concentrated exposure to extreme heat, extreme cold, and vibration. She had to avoid dangerous unprotected heights and dangerous unprotected moving machinery.

(Tr. 17)

The ALJ ultimately concluded that Plaintiff was not disabled because based on the RTC of light work, she was able to perform her past relevant work of an insurance clerk (Tr. 21).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff was born in 1953 and was 64 years old on the alleged onset date of December 8, 2014 (Tr. 131). In her application for disability benefits, Plaintiff listed the following conditions as limiting her ability to work: IDDM (insulin-dependent diabetes mellitus) with neuropathy, transient ischemic attack, deep vein thrombosis, hypertension, and arthritis (Tr. 178).

**Evidentiary Hearing**

Plaintiff was represented by counsel at her hearing on August 13, 2019 (Tr. 30) and testified to the following: Her last work was caretaking of her sister, who died in December 2014 (Tr. 35). The state paid her to handle her sister's housework, but she could not do anything that involved heavy lifting (Tr. 35). Her duties included cooking, washing laundry, and assisting with showers (Tr. 35). She was previously working as an insurance agent and license remitter before the owners of that business passed away (Tr. 38). She has neuropathy in her feet that causes her to fall and uses a walker and a cane for balance (Tr. 40-41). She has lower extremity swelling and elevates her leg to the waist level when home (Tr. 43-44). She has trouble sitting and must shift positions (Tr. 43-44). She takes Meloxicam for hip pain (Tr. 45).[1]

**Relevant Medical Records**

Plaintiff went to the Memorial Hospital ER on January 30, 2014 for back pain (Tr. 361). X-rays taken showed multilevel lumbar spondylosis with a worse level of L5-S1 (Tr. 366). Another X-ray taken in September 2014 showed the same (Tr. 265).

Plaintiff went to Memorial Hospital ER again on March 9, 2015 for back pain (Tr. 266). She went to the same ER on June 11, 2015 on the advice of her primary care physician; she had a right-sided facial droop that had started seven days earlier, but she felt improved on the day she visited the ER (Tr. 271).

Plaintiff had a CT scan of her head after the right sided droop that showed no acute intracranial process and periventricular white matter hypoattenuation, likely due to chronic

---

[1] The hearing ended without the testimony from the vocational expert (Tr. 48).

small vessel ischemic disease (Tr. 278). Doctors diagnosed her with transient ischemic attack (Tr. 275).

Plaintiff had a brain MRI on June 15, 2015 that showed progressive T2 signal hyperintensity within the left basal ganglia and adjacent white matter, likely from chronic ischemic changes, and a new area of ovoid T2 signal hyperintensity within the globus pallidus that could represent a subacute area of ischemic change, but no acute infarct or ischemia (Tr. 281).

Plaintiff had an echocardiogram on June 17, 2015 that was mostly normal, except for trace mitral regurgitation and trace to mild tricuspid regurgitation (Tr. 283-284). Plaintiff had a bilateral carotid ultrasound on the same date that showed intimal thickening and plaque formation in the bilateral carotid bulbs without evidence of flow significance on either side (Tr. 286).

On July 29, 2015, Plaintiff underwent a venous duplex scan of both legs that evidenced left calf vein deep venous thrombosis but no evidence of deep venous thrombosis (Tr. 288).

A brain MRI on October 6, 2015 had no acute findings and noted that there was mild atrophy and small vessel disease consistent with patient's age (Tr. 302).

An X-ray on October 13, 2015 demonstrated mild osteoarthritic changes of both hips (Tr. 303-304).

Plaintiff had a lumbar spine MRI on October 29, 2015 that showed mild lumbar spondylosis without compressive disc herniations (Tr. 313-314).

Plaintiff went to the Memorial Hospital ER on February 27, 2016 for chest pain (Tr. 638). The examining physician, Dr. Muhammad Ansari, noted that she ambulates without any assistance and that she denied calf tenderness (Tr. 327). Another echocardiogram conducted

on that date was mostly normal except for trace mitral regurgitation and grade I diastolic dysfunction with an abnormal relaxation pattern (Tr. 323). A CT scan of the chest showed mild paraseptal and centrilobular emphysema (Tr. 335). Plaintiff underwent a nuclear medicine myocardial perfusion study that found no scintigraphic evidence of ischemia and normal left ventricular systolic wall motion (Tr. 336). A chest X-ray found no active pulmonary disease (Tr. 338). A CT scan of the head showed no evidence of acute intracranial pathology (Tr. 339).

Plaintiff went to the Memorial Hospital ER on April 17, 2016 (Tr. 665). An abdominal CT scan showed a small umbilical hernia containing noninflamed mesenteric fat only (R. 673).

A venous duplex scan on April 27, 2016 showed chronic deep venous thrombosis in the left soleal vein with reflux noted and no acute vein thrombosis in right lower extremity (Tr. 674).

Plaintiff saw her primary care physician, Dr. Nidal Shawahin, on April 4, 2016. She complained of swelling in both feet in the prior two weeks (Tr. 429). She had a normal gait and station without swelling on examination (Tr. 429). On June 16, 2017, Dr. Shawahin provided Plaintiff with shoe inserts to address her diabetic polyneuropathy (Tr. 424).

Plaintiff saw a podiatrist, Dr. Willie Brown, during three visits from January to June 2018 (Tr. 524-531). He recommended fungal creams and better toenail care to reduce pain (Tr. 531).

Plaintiff saw another podiatrist, Dr. Natalie Mota, in December 2018, for toenails that were difficult to cut and complaining of many of the issues as with Dr. Brown (Tr. 615). Dr. Mota noted mostly normal findings, including intact general sensation, no lesions, unremarkable gait with normal posture, and no pain with diffuse palpation of the foot and ankle

or with manual muscle strength testing against resistance in the left or right lower extremity (Tr. 616). Dr. Mota also noted that Plaintiff had diminished bilateral pulses, decreased temperature, sparse hair, bilateral mild venous insufficiency edema, and diminished muscle tone in the lower extremities (Tr. 615-616). There was absent sensation to monofilament testing and diminished vibration perception (Tr. 616). At follow up visits in March, May, and August 2019, there were similar findings alongside intact general sensation and monofilament sensation (Tr. 764-765, 769-770). Dr. Mota recommended toenail care, walking for exercise, wearing properly fitted and supportive shoes, and applying lotion to the feet to keep the skin well hydrated (Tr. 617). Dr. Mota's records did not include images.

## Medical Opinion

Dr. Vittal Chapa, an orthopedist, examined Plaintiff on December 7, 2017 (Tr. 508). The examination revealed full range of motion, full strength, and normal pinprick sensation in her feet (Tr. 510). The diagnostic impression was chest pain consistent with angina, hypertension, diabetes, and a history of arthritis (Tr. 510).

## State Agency Consultants' Opinions

The ALJ relied on three state consultants in his decision: On December 13, 2017, physiatrist Dr. Lenore Gonzalez reviewed the evidence and opined that Plaintiff had some work restrictions, including issues with climbing, balancing, kneeling, and crawling (Tr. 57), but that she could stand, walk, and sit for 6 hours in an 8-hour workday (Tr. 56-58).

On April 26, 2018, anesthesiologist Dr. Ranga Reddy reviewed the evidence and found that the Plaintiff had normal gait, strength, and range of motion (Tr. 72), that she could lift up to 20 pounds, stand for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday (Tr. 71).

On May 14, 2018, internist Dr. Cristina Orfei reviewed the evidence and opined that Plaintiff was "not restricted" with her ambulation (Tr. 86). She noted that although Plaintiff reported that she cannot walk or stand for most of the time, the objective evidence in the file reports that Plaintiff can perform light work, which includes standing 6 hours per day (Tr. 87).

## Discussion

Plaintiff asserts that (1) the ALJ failed to submit new objective evidence to medical expert scrutiny (treatment with Dr. Mota); and (2) the ALJ failed to consult a vocational expert and/or the Dictionary of Occupational Titles ("DOT") to determine that Plaintiff's functioning allowed her to perform her past job of insurance agent. The Court discusses each argument in turn.

It is undisputed that there was new medical evidence that the state doctors did not consider – Dr. Orfei reviewed the medical evidence in May 2018, but there were subsequent medical records from Dr. Mota from March to August 2019 that were not reviewed. In discussing Dr. Mota's findings, the ALJ noted:

> In March, May, and August 2019, her sensation was intact bilaterally and other findings were essentially normal (13F, 14F/2-3, 7-8). Her vibration perception remained diminished but other findings were normal, including in her toes of less than three seconds, normal gait, and no signs of sores. Moreover, Dr. Mota noted the claimant's pain was no more than mild in March 2019 and only recommended she use a cushion to reduce her symptoms (13F/ 2 -4). In May 2019, Dr. Mota noted only minimal pain in May 2019 (14F/ 8). Additionally, the treatment records from the claimant's treating physicians and other medical providers show few signs or symptoms to support greater restrictions in the claimant's residual functional capacity due to her neuropathy.

(Tr. 19).

An ALJ errs in accepting a reviewing doctor's opinion if the reviewer did not have access to later medical evidence containing "significant, new, and potentially decisive

findings" that could "reasonably change the reviewing physician's opinion." *Stage v. Colvin,* 812 F.3d 1121 (7th Cir. 2016). However, "[n]ot all new evidence" received following the state agency consultants' opinions will require a remand. *Kemplen v. Saul,* 844 F. App'x 883, 887 (7th Cir. 2021). "An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). *See also*, 20 C.F.R. § 404.1512(e). An ALJ's decision with respect to how to treat new medical records must "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009) (internal citations omitted).

      Here, the Court defers to the ALJ's judgment about whether Dr. Mota's records required that he recontact the medical sources to evaluate Plaintiff's disability claim. The ALJ provides a logical bridge in his opinion that the limited care and generally normal findings by Dr. Mota did not alter Plaintiff's RPC due to her neuropathy, as they did not constitute significant, new, and potentially decisive findings. They did not include surgeries or an indication that Plaintiff's condition had significantly deteriorated. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Rather, the records reflect that Plaintiff was in mild pain, needed a cushion for her feet, and had normal gain and sensation. Dr. Mota's recommendations included exercise and toenail care. This Court finds no error with the ALJ's determination that these records were not significant enough to reconsult with the state agent in order to determine if they modified the agent's opinions regarding Plaintiff's disability.

      Likewise, the Court finds no error with the ALJ's determination that, after considering Dr. Mota's records, gathering further evidence was unnecessary. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). "If an ALJ were required to update the record any time a claimant

continued to receive medical treatment, a case might never end." *Keys v. Berryhill*, 679 F.App'x 477, 480-81 (7th Cir. 2017), quoting *Schneck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Here, Dr. Mota's recommendations were limited to exercise and self-care, and the medical issues raised were addressed in her prior medical records. Significantly, Plaintiff did not seek to reopen the case or have the ALJ reconsider any of his determinations in light of Dr. Mota's records.

Plaintiff also argues that, after finding that she had an RTC of light work, the ALJ should have used a vocational expert or considered the DOT in assessing Plaintiff's disability. If the claimant's combined impairments do not meet or medically equal the severity of a listing, the Commissioner determines the claimant's residual functional capacity (RFC) (the maximum work-related functioning she retains despite impairments) and if that RFC allows her to perform past relevant work at step four, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant is not disabled at step four if she can perform her past work either as it is generally performed in the national economy or as she performed it. *Hernandez v. Astrue*, 277 F. App'x 617, 624–25 (7th Cir. 2008). If there is a finding based on the actual functional demands and job duties of a particular past job, then the "ALJ [does not need] to consider the DOT classification of that job." *Brewer v. Chater*, 103 F.3d 1384, 1393 (7th Cir. 1997).

It was not error for the ALJ to not consult the DOT or procure the testimony of a VE in determining that Plaintiff could perform her past work of an insurance clerk. The ALJ noted that, "the claimant's work as an insurance agent and file clerk meets the recency, duration and earnings level to qualify as past relevant work (SSR 82-62). The exertional demands of this work are within the claimant's reduced range of light residual functional capacity" (Tr. 21). The ALJ described how this work required Plaintiff to do limited lifting of less than 10 pounds,

to stand and walk 5 to 6 hours a day, and to sit for another 2 to 3 hours a day (Tr. 21). The ALJ also found that this job was in an office and did not require her to use dangerous machines, tools, or equipment and noted that she had left this job not because of any medical condition, but because the owners had passed away (Tr. 21). Under *Brewer*, the ALJ did not need to consult a vocational expert or consider the DOT classification.

## Conclusion

After a careful review of the record, the Court finds that ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: July 7, 2022**

**STACI M. YANDLE**
**United States District Judge**